6623

### FIELDS v. LANCASTER COTTON MILLS.

MASTER AND SERVANT—NEGLIGENCE—WILFULNESS—PUNITIVE DAMAGES.—
A cotton mill is liable in punitive damages to one going on the mill property to entice away its employees, where the superintendent participated in having him tied and thrown into a pond of water, whether the recovery included actual damages or not.

Before KLUGH, J., Lancaster, March Term, 1906.   Affirmed.

Action by Joseph H. Fields against Lancaster Cotton Mills.   From judgment for plaintiff, defendant appeals.

*Messrs. Williams* and *Williams,* for appellant, cite: *Did the servant of the defendant act within the scope of his employment?*   13 Ind. App., 161; 140 Mass., 327; 57 Ga., 253; 72 S. C., 206; 14 L. R. A., 741; 37 S. C., 194; 38

S. C., 29; 33 S. C., 198; 57 S. C., 243. *Punitive damages should not be recovered without finding of actual damages:* 2 Mill., 151; 11 Mich., 548; 78 Ala., 243; 105 Cal., 680; 70 Ill., 136; 344 S. W., 762; 72 Ill., 133; 540; 73 Ill., 561; 60 Mo. App., 119; 75 Tex., 1; 16 Wis., 485; 73 Fed., 196; 35 N. Y. Sup. Ct., 118; 66 Tex., 588; 21 Ohio, 191; 50 Wis., 645; 67 Me., 517; 60 S. C., 72; *Oliver* v. *R. R.,* 65 S. C.; 70 S. C., 418.

*Mr. J. Harry Foster,* contra, cites: *If servant in making assault acted within scope of his employment, master is liable:* 69 Tex., 156; 3 Head., 471; 47 N. Y., 126; 64 N. Y., 134; 37 Ill., 595; 37 S. C., 194; 3 S. C., 8; 67 S. C., 391; 58 S. C., 143; 3 S. C., 9; 128 N. C., 333; 147 U. S., 37; 50 Am. R., 159; 10 Ohio, 110; 47 N. Y., 23; 42 Mo., 79; 46 N. Y., 23; 15 La., 169; 40 S. C., 87; 58 Ia., 348. *How agency may be shown:* 48 S. C., 430; 65 S. C., 116, 75; 69 S. C., 420. *Punitive damages are awarded under proper facts as a vindication of a private right:* 69 S. C., 110, 119; 62 S. C., 330; 65 S. C., 1, 127; 60 S. C., 73; 66 S. C., 542; 72 S. C., 263; 69 S. C., 327; 65 S. C., 444; 73 S. C., 430; 69 S. C., 115, 132; 57 S. C., 234; 53 S. C., 210.

August 13, 1907. The opinion of the Court was delivered by

MR. JUSTICE WOODS. On August 21st, 1905, the plaintiff, Joseph H. Fields, went from Winnsboro to Lancaster for the purpose of hiring hands, then in the employment of the Lancaster Cotton Mills, for the Fairfield Mills.

The coming of outsiders on the mill property and inducing the hands to leave was a serious grievance to the Lancaster Mills, and the superintendent had instructed the overseers to prevent it by warning such persons not to come on the mill property, and if the warning was unheeded to have them arrested by an officer.

Having information of the coming of Fields, or of some other person, with the design of enticing away the mill

hands, the overseers, Hope, Layton, Hull, Mahaffey, Joseph Johnson, and William Johnson, went to the railroad station and met Fields. The defendant, Skipper, was also at the station, but for the purpose, as he testifies, of mailing a letter. After a friendly greeting, Fields walked in company with the superintendent and overseers towards the mill settlement, saying to them falsely, that he had no intention of trying to hire hands, and had come only "to see his girl." When they reached the mill property some of the party seized and tied Fields and threw him into the mill reservoir and kept him there for a minute or two.

The plaintiff sued the Lancaster Cotton Mills and Skipper for $25,000 damages, alleging the indignity to have been maliciously inflicted upon him, in pursuance of a preconcerted plan agreed on by them.

The appeal is from a recovery of $800 against the Lancaster Cotton Mills alone.

The defendant first insists the Circuit Court committed error in refusing to grant a nonsuit, and subsequently refusing to order a new trial, on the ground that there was no evidence whatever of the participation of the defendants in the tort. Without evidence of the participation of Skipper, the superintendent of the mill, there might be some question whether the mill would be liable for the wrong committed by the overseers, who had no authority to act for the mill beyond warning such persons as Fields to keep off the mill property, and to appeal to the law if the warning should be unheeded. But there was a conflict of evidence on the point of Skipper's participation. All the overseers testified the seizure and ducking of the plaintiff was the result of his having drawn a knife on Hope without provocation; and they all support Skipper in his statement that he had nothing whatever to do with the assault.

Skipper admitted that he had some years before thrown into the water a man who had troubled him in a similar way, and that on this occasion he stood by and saw Hope and others carrying the plaintiff to the reservoir, with the

avowed purpose of throwing him in. He testified, however, that he had no idea there was any serious intention to carry out the threat. The plaintiff's testimony was to the effect that Skipper did not actually lay hands on him and was a little distance apart when he was cast into the water; but he also testified Skipper was one of the ringleaders of the mob, and when he was pulled out said: "Next time I come back here he would do me a damn sight worse." From this statement of the evidence it is manifest the issues of participation by the superintendent and the motive of the assault were for the decision of the jury.

The superintendent of a cotton mill is usually the representative of the mill, with respect to the hiring and management of its operatives, and other features of its mechanical operations. The evidence on the part of the defendant shows the superintendent, in this instance, was intrusted with the control of its policy and the methods to be employed to prevent interference with the operatives. The Lancaster Cotton Mills cannot, therefore, escape liability to third persons for any action taken by him with respect to the matters it had placed under his control. It makes no difference that the action was unlawful and that it would not have been sanctioned by the corporation itself. "The principal is liable for the. acts of his agent done in the course of his employment." *Parkerson* v. *Wightman*, 4 Strob., 363; *Cobb* v. *R. R. Co.*, 37 S. C., 194, 15 S. E., 78; *Rucker* v. *Smoke,* 37 S. C., 377, 16 S. E., 40; *Skipper* v. *Mfg. Co.*, 58 S. C., 143, 36 S. E., 509; *Hutchison* v. *Real Estate Co.*, 65 S. C., 75, 43 S. E., 295; *Polatty* v. *Ry. Co.*, 67 S. C., 395, 45 S. E., 932; *Mitchell* v. *Leech*, 69 S. C., 413, 48 S. E., 200; *Williams* v. *Tolbert,* 76 S. C., 211.

There was no error in refusing the motions for nonsuit, and for a new trial, made on the grounds that there was no evidence of the participation by the Lancaster Cotton Mills in the tort. The verdict was in this form: "We find for the plaintiff eight hundred dollars against the Lancaster Cotton Mills, for punitive damages." The defendant contends this

verdict was illegal and should have been set aside because its language excludes the idea of actual damages, and there can be no recovery for punitive damages without actual damages.    Since this exception was taken the point has been settled contrary to the defendant's view by the case of *Doster v. Tel. Co.,* 77 S. C., 56.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.