**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Alexis Jones, Respondent-Appellant,

v.

Progressive Northern Insurance Company, Appellant-Respondent.

Appellate Case No. 2023-000654

———————

Appeal From Chester County
Brian M. Gibbons, Circuit Court Judge

———————

Unpublished Opinion No. 2025-UP-074
Heard December 3, 2024 – Filed February 26, 2025
Withdrawn, Substituted, and Refiled April 16, 2025

———————

**AFFIRMED**

———————

Jeffery Logan Cannon, of Shaw And Cannon, LLC, of Rock Hill; and John S. Nichols, of Bluestein Thompson Sullivan LLC, of Columbia, both for Appellant.

John Robert Murphy and Megan Noelle Walker, both of Murphy & Grantland, PA, of Columbia, for Respondent.

———————

**PER CURIAM:** Alexis Jones, a Medicaid recipient, was involved in a car accident and sustained injuries. Her medical expenses originally totaled $27,786.17 but were subsequently adjusted to $1,323.60 and paid for by Medicaid. Jones was also covered by an automobile insurance policy (the Policy) from Progressive Northern Insurance Company (Progressive) which included a $10,000 medical payments provision for "incurred" medical expenses. On appeal, Progressive argues the circuit court erred in finding it breached the insurance contract by paying Jones the reduced amount of expenses paid by Medicaid instead of the entire $10,000 policy limit. It argues the term "incurred" means only the amount actually paid by Medicaid. On cross-appeal, Jones argues the circuit court erred in denying her claims that Progressive's refusal to pay the entire $10,000 medical payment policy limit was (1) made in bad faith, (2) a breach of the covenant of good faith and fair dealing, (3) a breach of its fiduciary duty, (4) a breach of contract accompanied by a fraudulent act, and (5) a violation of S.C. Code Ann. § 38-77-144 (2015). She also asserts the circuit court erred in declining to award her attorney's fees pursuant to S.C. Code Ann. § 38-59-40 (2015). We affirm.

1. We hold the circuit court properly found Progressive breached the contract and awarded Jones the full policy limit; however, the circuit court erred in finding the term "expenses incurred" was ambiguous. *See Gibson v. Epting*, 426 S.C. 346, 351, 827 S.E.2d 178, 181 (Ct. App. 2019) ("Ambiguity of a contract is a question of law, which we review de novo."); *McCord v. Laurens Cnty. Health Care Sys.*, 429 S.C. 286, 292-93, 838 S.E.2d 220, 223 (Ct. App. 2020) ("To be ambiguous, contract language must be susceptible to two different but plausible meanings."). Our supreme court has held that the words "expenses incurred" in an automobile insurance policy are not ambiguous and should be taken in the plain and ordinary sense of the words. *See Gordon v. Fid. & Cas. Co. of N.Y.*, 238 S.C. 438, 444, 120 S.E.2d 509, 512 (1961) (finding there was "no uncertainty or ambiguity in the language of the policy" in regards to the phrase "expense incurred," and the words "must be taken in the plain and ordinary sense in which they are generally used and understood"); *id.* ("[I]n cases where there is no ambiguity, contracts of insurance, like other contracts, must be construed according to the terms which the parties have used, to be taken and understood in their plain, ordinary and popular sense."). Black's Law Dictionary defines "incur" as "[t]o be liable or subject to." *Black's Law Dictionary* 768 (6th Ed. 1990). "South Carolina law defines 'expense incurred' for insurance purposes as 'a thing for which there exists [an] obligation to pay, either express or implied.'" *See Barker v. Washington National Insurance Company*, No. 9:12-CV-1901-PMD, 2013 WL 1767620, at *5 (D.S.C. Apr. 24, 2013) (quoting *Gordon*, 238 S.C. at 445, 120 S.E.2d at 512).

However, we find the circuit court properly determined that Jones incurred medical expenses in excess of what Progressive paid. Once Jones was treated by the medical providers, she became liable for or subject to the costs of the care—regardless of her insurance coverage. Progressive relies heavily on the *Gordon* case. In *Gordon*, however, the plaintiff received *free* medical care from a military hospital. *See Gordon*, 238 S.C. at 441, 120 S.E.2d at 510. Further, his claim was based on an appraisal from two doctors and utilizing the prevailing rates in the area since he was not billed for the services he received. *Id.* Gordon's medical services were free so he was not obligated to pay for the services rendered. *Id.* Therefore, he did not "incur" an expense. *Id.* In this case, Jones did not receive free medical care. She was charged for the services rendered, and she was billed for the same. When Jones went for treatment, she had no way to know what treatment she needed, how much it would cost, or how much would be covered by Medicaid. Once she received the treatment, she was billed the full amount. While the bills were adjusted for Medicaid at some point, most of the bills in the record show the full amount charged with no adjustment for Medicaid. Therefore, while we acknowledge that her costs were eventually adjusted and paid by Medicaid, Jones still incurred the full amount charged and was responsible for ensuring the bills were paid.

The Policy must be construed in favor of Jones. *See id.* at 444, 120 S.E.2d at 512 (explaining "the terms of an insurance policy must be construed most liberally in favor of the insured"). First, the Policy does not provide a definition of "incurred" that differs from what case law has established. Furthermore, there is no provision in the Policy providing for a different (or lesser) payment amount when the insured is covered by Medicaid.[1] Accordingly, we believe the circuit court properly found Progressive breached the contract because Jones incurred $27,786.17 in medical expenses and, therefore, Progressive was obligated to pay her the entire $10,000 medical payment under the Policy.

2. We hold the circuit court properly dismissed Jones's bad faith claim. *See HHHunt Corp. v. Town of Lexington*, 389 S.C. 623, 631, 699 S.E.2d 699, 703 (Ct. App. 2010) ("In reviewing the dismissal of an action pursuant to Rule 12(b)(6), SCRCP, the appellate court applies the same standard of review as the [circuit] court."); *id.* at 632, 699 S.E.2d at 703 ("[T]he [circuit] court must base its ruling

---

[1] Progressive relies heavily on an unpublished order from *Barker*, No. 9:12-CV-1901-PMD, 2013 WL 1767620, at *5. However, the insurance contract in *Barker* contained a provision which provided the insurer would only pay the Medicare adjusted amount. We do not have such a provision in this case.

solely on allegations set forth in the complaint."). Jones originally asserted three closely related claims against Progressive: bad faith, breach of duty of good faith and fair dealing, and breach of fiduciary duty. As the circuit court pointed out in its order and Jones acknowledged in her brief, we believe these three causes of action are redundant and are best analyzed together under a bad faith claim.

Neither party disputes that the first, second, or fourth elements required for a bad faith claim are met in this case. *See Cock-N-Bull Steak House, Inc. v. Generali Ins. Co.*, 321 S.C. 1, 6, 466 S.E.2d 727, 730 (1996) (explaining the elements of an action for bad faith include (1) a "mutually binding contract of insurance between the plaintiff and the defendant," (2) the insurer's refusal to pay benefits due under the contract, (3) the refusal is a result of insurer's bad faith or unreasonable action, and (4) which causes damage to the insured (quoting *Crossley v. State Farm Mut. Auto. Ins. Co.*, 307 S.C. 354, 359-60, 415 S.E.2d 393, 396-97 (1992))). As to the third element, we believe there is no evidence that Progressive acted in bad faith. *See Dowling v. Home Buyers Warranty Corp.*, 303 S.C. 295, 297, 400 S.E.2d 143, 144 (1991) ("An insured may recover damages for a bad faith denial of coverage if he or she proves there was no reasonable basis to support the insurer's decision to deny benefits under a mutually binding insurance contract."). Progressive denied Jones the full policy limits based upon its misapplication of *Gordon* and *Barker*. Although we disagree with Progressive's interpretation of those cases, we do not find Progressive acted in bad faith. Additionally, because we hold the circuit court properly dismissed the bad faith claim and made no finding that the denial was without reasonable cause, we do not reach the issue of attorney's fees.

3. We hold the circuit court properly dismissed Jones's claim for breach of contract accompanied by a fraudulent act. *See HHHunt Corp.*, 389 S.C. at 631, 699 S.E.2d at 703 ("In reviewing the dismissal of an action pursuant to Rule 12(b)(6), SCRCP, the appellate court applies the same standard of review as the [circuit] court."); *Conner v. City of Forest Acres*, 348 S.C. 454, 465-66, 560 S.E.2d 606, 612 (2002) ("[T]o have a claim for breach of contract accompanied by a fraudulent act, the plaintiff must establish three elements: (1) a breach of contract; (2) fraudulent intent relating to the breaching of the contract and not merely to its making; and (3) a fraudulent act accompanying the breach."); *id.* at 466, 500 S.E.2d at 612 ("The fraudulent act is any act characterized by dishonesty in fact or unfair dealing."). There is no evidence of an independent fraudulent act that accompanied Progressive's breach of contract because its failure to analyze and apply the relevant or proper cases when considering Jones's claim was *part of* the breach. *See Minter v. GOCT, Inc.*, 322 S.C. 525, 530, 473 S.E.2d 67, 70 (Ct. App. 1996)

(explaining there must be "evidence of an independent fraudulent act which accompanied the breach").

4. We hold the circuit court correctly found section 38-77-144 does not provide a private cause of action. *See HHHunt Corp.*, 389 S.C. at 631, 699 S.E.2d at 703 ("In reviewing the dismissal of an action pursuant to Rule 12(b)(6), SCRCP, the appellate court applies the same standard of review as the [circuit] court."). We find the Legislature did not intend to provide insureds a private cause of action under section 38-77-144. *See* § 38-77-144 ("If an insurer sells no-fault insurance coverage which provides [PIP], medical payment coverage, or economic loss coverage, the coverage shall not be assigned or subrogated and is not subject to a setoff."). The statute does not expressly create a civil liability on behalf of the insurer, and we find the Legislature intended only to protect insureds from an insurance company applying a setoff. *See Denson v. Nat'l Cas. Co.*, 439 S.C. 142, 151, 886 S.E.2d 228, 233 (2023) ("The main factor in determining whether a statute gives rise to a private cause of action is legislative intent, which is determined primarily from the language of the statute."); *id.* at 151-52, 886 S.E.2d at 233 ("Generally, when a statute does not expressly create civil liability, a duty will not be implied unless the statute was enacted for the special benefit of a private party."). Accordingly, we hold the Legislature did not enact this statute with the intention of providing an insured with an additional cause of action when an insurance company improperly reduces the amount it is obligated to pay pursuant to the policy. Therefore, we find the court did not err.


**AFFIRMED.**

**WILLIAMS, C.J., and MCDONALD and TURNER, JJ., concur.**